UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
AHMAD AL-KAYSEY,

                Plaintiff,               **MEMORANDUM & ORDER**
                                     11-CV-6318 (RRM) (LB)

      - against -

L-3 SERVICES INC., LOTS DIVISION, L-3
COM, GLOBAL LINGUISTICS SOLUTIONS,
and ODA 5224, SPECIAL FORCES, U.S.
ARMY,

                Defendants.
-----------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiff Ahmad Al-Kaysey, proceeding *pro se*, commenced this action on December 27,

2011, against defendants L-3 Services, Inc. ("L-3"); Global Linguistic Solutions ("GLS"); and

Operational Detachment Alpha 5224 ("ODA 5224"), a Special Forces unit of the United States

Army, alleging that defendants violated his constitutional rights and Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e *et seq.* (*See* Compl. (Doc. No. 1).) Before the Court is a motion

(Doc. No. 48) filed by ODA 5224 to dismiss the complaint pursuant to Federal Rule of Civil

Procedure 12(c), 12(b)(3), and 12(b)(5).[1] For the reasons that follow, the motion is denied.

## FACTS

      Plaintiff was employed by L-3 from January 29, 2005, through August 7, 2010, as a

linguist. (Compl. ¶ 1.) At that time, L-3 was under contract with the United States Department

of Defense to provide linguistic services for the United States Army. (*Id.*) Sometime during

plaintiff's employment, L-3 became a sub-contractor of GLS, which was also under contract

with the Army. (*Id.*) In 2010, plaintiff was embedded with ODA 5224 in Iraq. (*Id.* ¶ 5.)

---

[1] Also pending are fully-briefed motions to dismiss filed by L-3 and GLS (Doc. Nos. 33, 34). Those motions are
granted in part and denied in part by separate Order issued this date.

According to the complaint, during that time various sergeants in the unit allegedly discriminated against plaintiff. In particular, plaintiff recounts instances in which one sergeant allegedly called plaintiff a "Sand Nigger" and a "Camel Jockey" (*id*. ¶ 6); another described plaintiff's religion as "a faith of violence" (*id*. ¶ 7); and a third made other derogatory racial remarks, calling plaintiff a "Monkey" and "inferior" because plaintiff is of Iraqi descent. (*Id*. ¶¶ 7, 12.) Allegedly fearing retaliation from officers within the unit, plaintiff did not report any of this behavior to his superiors. (*Id*. ¶ 10.) Plaintiff did, however, report the conduct anonymously to the Office of the Inspector General of the Army. (*See id*. ¶¶ 9. 27.)

In June 2010, an Iraqi informant working with a different Army unit contacted plaintiff and expressed dissatisfaction with the informant's unit. (Compl. ¶ 11.) Plaintiff told the informant not to contact him again and reported the incident to his commanders in ODA 5224. (*Id*. ¶¶ 11–12.) Plaintiff was reprimanded for continuing to communicate with the informant. (*Id*. ¶ 12.)

On August 2, 2010, a Lieutenant Daniel O'Connor issued an email recommendation stating

> It is imperative that [plaintiff] be terminated with prejudice at the earliest opportunity. This linguist should be considered a security risk and must not be re-hired, or allowed to retain a security clearance under any circumstances.

(*Id.*, Ex. 3.) According to Lieutenant O'Connor,

> After making initial contact with a suspected source target, linguist was told to cease and desist all further contact. The linguist disobeyed this order, and continued communication with the source. This was reported to the ODA by a secondary source, and confirmed when the ODA conducted a check on the initial source's cell phone; revealing between 500-600 calls within a 20 month period. It has also been suggested, but not verified, by the same third source that supplied the ODA with the information about the phone calls that the linguist may be interfacing with sources from

other ODA's and/or sources who work with other U.S. Military units.

(*Id.*)  Following that email, the military ordered GLS and L-3 to "terminate the employment of the above linguist ASAP."  (*Id.*)  That same day, plaintiff alleges he overheard a sergeant in ODA 5224 say, "Let's do it and get rid of" plaintiff.  (*Id.* ¶ 16.)

At some point, plaintiff was called into a meeting where ODA 5224 officers allegedly forbade him to talk, ordered him to pack his belongings, and confiscated his electronics and clothing.  (Compl. ¶ 16.)  Plaintiff was then driven to Baghdad Airport and taken to a GLS office.  (*Id.* ¶ 17.)  Plaintiff requested to speak with legal or human resources personnel, but his request was denied.  (*Id.*)  Plaintiff's bags and computer were then searched and his external hard drive confiscated.  (*Id.*)  At no point was plaintiff presented with any "evidence, witnesses[,] or sworn statement[s]" substantiating the reasons for his termination.  (*Id.* ¶ 16.)

On August 3, 2010, GLS terminated plaintiff's employment.  (*Id.* ¶ 31.)  Four days later, on August 7, 2010, L-3 followed suit.  (*Id.*)  As the complaint alleges, neither company gave plaintiff an opportunity to contest ODA 5224's decision to terminate his employment or offered any evidence substantiating the reasons for his termination.  (*Id.* ¶ 43.)  By letter, L-3 merely informed plaintiff that

> L-3 did not participate in any decisions by the U.S. Government with respect to either your clearance or your employment.  However, under the terms of our agreements with the U.S. Government, L-3 is required to honor the U.S. Government decisions with respect to the selection of personnel.

(*Id.*, Ex. 12.)

Following plaintiff's termination, L-3 filed an incident report with the Joint Personnel Adjudication Services ("JPAS"),[2] which recited verbatim the information contained in Lieutenant O'Connor's email. (*See id.* ¶ 45, Ex. 17.) Plaintiff asserts that he did not learn of the incident report until he applied for new positions with other companies and was allegedly rejected because of the report. (*Id.* ¶¶ 45, 48.) When plaintiff requested a copy of the incident report from L-3, the company delayed fulfilling his request. (*Id.* ¶ 47.)

After eventually obtaining a copy of the incident report, plaintiff requested that the Defense Industrial Security Clearance Office ("DISCO")[3] investigate the underlying allegations. (Compl. ¶ 51.) DISCO declined, stating that an employer was required to hire plaintiff before it would open such an investigation. (*Id.*) Plaintiff then filed a Freedom of Information Act request seeking to have the report amended or expunged and requesting supporting evidence from various government agencies. (*Id.* ¶ 53-54.) These efforts were unsuccessful. (*Id.*) Plaintiff complains that to date, defendants have yet to offer any evidence substantiating plaintiff's alleged misconduct. (*Id.* ¶ 55.)

---

[2] The Joint Personnel Adjudication System ("JPAS") "is a confidential database in which the Department of Defense maintains information about the security clearances of its employees and contractors." *The Ravens Grp., Inc. v. United States*, 79 Fed. Cl. 100, 102 (Fed. Cl. 2007).

[3] The Defense Industrial Security Clearance Office ("DISCO") is the agency responsible for processing requests for personnel security clearances for industry personnel. *See High Tech Gays v. Def. Indus. Sec. Clearance Office*, 895 F.2d 563 (9th Cir. 1990). As the Ninth Circuit has explained,

> For a Secret clearance, the Defense Industrial Security Clearance Organization (DISCO) conducts a National Agency Check (NAC), which consists at a minimum of a record check of the Federal Bureau of Investigation and the Defense Central Intelligence Index, but may also include a record check of the Office of Personnel Management, the Immigration and Naturalization Service, the State Department, and the Central Intelligence Agency. For Top Secret clearance, the Defense Investigative Service (DIS) completes a Background Investigation (BI) for each applicant, which consists of a NAC, local records check, and interviews with personal sources.

*Id.* at 565–68 (internal citations omitted).

Al-Kaysey also alleges that in July 2007, he found out that a background investigation for a security clearance was closed because L-3 failed to inform him that he needed to interview with an investigator.  (Compl. ¶ 59.)  Because his clearance was delayed for thirteen months as a result, he claims he could not be promoted from a CAT II linguist to a CAT III linguist, costing him over $50,000 in lost wages.  (*Id*.)  Also, in the summer of 2008, a human resources director for L-3 denied Al-Kaysey's request for paid and unpaid leave.  (*Id*. ¶ 60.)  In June 2009, Al-Kaysey suffered severe dehydration and heat exhaustion at an L-3 office in Iraq.  He collapsed twice, and no L-3 employee offered any assistance to him. (*Id*. ¶ 61.)

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), on March 24, 2011, and a complaint with the New York State Division of Human Rights ("NYSDHR") on April 19, 2011.  (Compl. ¶ 62.)  Both filings named L-3 as the sole respondent. (*Id*.)  The NYSDHR dismissed plaintiff's complaint on September 6, 2011, finding no probable cause to believe that L-3 had discriminated against him on the basis of his religion, national origin, race, or color.  (*See* Decl. of Jeremy Brown, Ex. C (Doc. No. 33-4).)  On October 21, 2011, the EEOC adopted the ruling of the NYSDHR and issued a right-to-sue letter.  (Compl., Ex. 1.)  Plaintiff then filed this action.

## DISCUSSION

As an initial matter, the Court notes that it must "construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009) (citations omitted).  In other words, the Court holds *pro se* complaints to a less exacting standard than complaints drafted by attorneys.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Boykin v. KeyCorp*, 521 F.3d 202, 213-14 (2d Cir. 2008) (citation omitted).  Since *pro se* litigants "are entitled to a liberal construction of their pleadings," the Court reads such pleadings to "raise the strongest arguments that they suggest."  *Green v.*

*United States*, 260 F.3d 78, 83 (2d Cir. 2001) (internal citations omitted).  Furthermore, "[a]

district court deciding a motion to dismiss may consider factual allegations made by a *pro se*

party in his papers opposing the motion."  *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir.

2013).  However, the Court "need not argue a *pro se* litigant's case nor create a case for the *pro

se* which does not exist."  *Molina v. New York,* 956 F. Supp. 257, 259 (E.D.N.Y. 1995).  When a

*pro se* plaintiff has altogether failed to satisfy a pleading requirement, the Court must dismiss the

claim.  *See Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997) (citation omitted).

## I.      Procedural Challenges

ODA 5224 first raises three procedural challenges, arguing that plaintiff's complaint

should be dismissed for failure to name the Secretary of the Army as a defendant, for insufficient

service of process, and for improper venue.  Because these matters relate to whether this Court

may properly adjudicate aspects the dispute, the Court addresses these arguments at the outset.

*See Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963); *DePasquale v.

DePasquale*, No. 12-CV-2564 (RRM) (MDG), 2013 WL 789209, at *4 (E.D.N.Y. Mar. 1, 2013),

*recons. denied*, 2013 WL 4010214 (E.D.N.Y. Aug. 5, 2013).

### A.  Failure to Name Secretary of the Army

Pursuant to 42 U.S.C. § 2000e-16(c), a Title VII plaintiff must file suit within "one

hundred and eighty days from the filing of the initial charge with the department, agency, or unit

or with the Equal Employment Opportunity Commission . . . ."  *Id.*  "When challenging the

employment practices of an executive agency of the federal government under the Civil Rights

Act as amended, a plaintiff may name as a defendant only the appropriate department head . . . ."

*Brown v. U.S. Merit Sys. Prot. Bd.*, No. 92-CV-2496 (CPS), 1993 WL 17435, at *1 (E.D.N.Y.

Jan. 20, 1993) (citing 42 U.S.C. § 2000e-16(c)).  Since plaintiff brings this action against a

division of the Army, the appropriate agent to sue is the Secretary of the Army. *See, e.g.*, *Portis v. Dep't of the Army*, 117 F.R.D. 579, 580 (E.D. Va. 1987); *Acosta v. Dep't of the Army*, No. 87-CV-5662, 1987 WL 13597, at *1 (N.D. Ill. July 6, 1987).

Plaintiff, however, did not name the Secretary as a defendant in this action. Instead, plaintiff named ODA 5224, the Special Forces division of the United States Army to which he was assigned. (*See* Doc. No. 1.) ODA 5224 argues that plaintiff's failure to name the correct official is fatal to the complaint and requires dismissal of plaintiff's claims. (*See* Def.'s Mem. in Supp. (Doc. No. 48-2) at 12–13.) ODA 5224 concedes, however, that "[t]he head of the agency may also be substituted as a defendant in a Title VII case." (*Id.* at 13 n.1.) In recognition of plaintiff's *pro se* status, the Court will substitute the Secretary of the Army for ODA 5224. *Cf. Elhanafy v. Shinseki*, No. 10-CV-3192 (JG) (JMA), 2012 WL 2122178, at *11 (E.D.N.Y. June 12, 2012) (finding that "this simple correction" accorded with a court's obligation to construe *pro se* complaints liberally and did not prejudice the defendant).[4] The caption shall be amended accordingly.

### B. Insufficient Service of Process

Second, ODA 5224 argues that the complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(5) for insufficient service of process. (*See* Def.'s Mem. in Supp. at 13–14.) The Federal Rules of Civil Procedure provide that in order "[t]o serve a United States agency . . . a party must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency . . . ." Fed. R. Civ. P. 4(i)(2). To serve the United

---

[4] Such an amendment must meet the standard of Fed. R. Civ. P. 15(c). *See Healy v. U.S. Postal Serv.*, 677 F. Supp. 1284, 1288 (E.D.N.Y. 1987) ("[A]n amendment which seeks to name the proper federal defendant will not relate back to the original complaint unless the notice requirement of Rule 15(c) is met."). As in *Shinseki*, the Court finds that though plaintiff "[a]dmittedly . . . did not name the head of the relevant agency or department as a defendant," 2012 WL 2122178 at *11, the claims arise out of the conduct, transaction, or occurrence set out in the original pleading and the Secretary of the Army "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii).

States, plaintiff was required to deliver or mail a copy of the complaint and summons to (1) the United States attorney for the district where the action is brought and (2) the Attorney General of the United States in Washington, D.C. *See* Fed. R. Civ. P. 4(i)(1).

It is clear that plaintiff struggled with the requirements under Rule 4. Plaintiff filed this action on December 27, 2011. (Doc. No. 1.) The next day plaintiff attempted to serve ODA 5224 by mailing a form Notice of Law Suit and Request to Waive Service of a Summons to Colonel Mark E. Mitchell, the Commander of the 5th Special Forces Group, at Fort Campbell in Kentucky.[5] (Doc. No. 4.) On May 30, 2012, plaintiff requested that a Certificate of Default be entered against ODA 5224. (Doc. No. 26.) On December 5, 2012, the Clerk of Court denied plaintiff's request on the ground that his affidavit of service did not indicate the Army had been properly served.

On December 12, 2012, plaintiff submitted a letter addressed to this Court and Magistrate Judge Lois Bloom, requesting an additional opportunity to prove service on ODA 5224. (Doc. No. 36.) That same day, plaintiff filed a Certificate of Service indicating that he had mailed copies of all documents related to his request for a Certificate of Default to Colonel Scott Brower at Fort Campbell on May 30, 2012.[6] (Doc. No. 37.) On December 14, 2012, plaintiff moved for a default judgment against ODA 5224. (Doc. No. 38.) Plaintiff attempted to serve his motion on ODA 5224 by mailing copies of the relevant documents to Colonel Brower; Attorney General

---

[5] ODA 5224 is apparently headquartered at Fort Campbell in Kentucky. (*See* Compl. at 5 (ECF Pagination).)

[6] It appears that on August 12, 2011 Colonel Brower assumed command of the 5th Special Forces Group from Colonel Mitchell. *See* Maj. Branson Bissell, *5th Group Welcomes New Commander*, The Fort Campbell Courier, August 25, 2011, *available at* http://fortcampbellcourier.com/news/article_59789788-cf52-11e0-9736-001cc4c002e0.html.

Eric Holder; and David J. Hale, the U.S. Attorney for the Western District of Kentucky.[7] (Doc. No. 39.)

Magistrate Judge Bloom denied plaintiff's motion for a default judgment on December 19, 2012, for failing properly to serve ODA 5224, observing that "the United States Army must be served in accordance with Rule 4(i)(2) of the Federal Rules of Civil Procedure, which requires that plaintiff also serve the United States." (Doc. No. 40.) Citing 42 U.S.C. § 2000e-16(c), Judge Bloom also noted that "the proper defendant in a Title VII lawsuit against an agency is the 'head of the department, agency, or unit.'" (Doc. No. 40 at 1 n.1.) Plaintiff responded with another letter on January 2, 2013, detailing his attempts to serve ODA 5224 and asking whether his efforts complied with the requirements of Fed. R. Civ. P. 4(i)(2). (*See* Doc. No. 41.) Plaintiff also requested clarification regarding the need to serve the "head of the department, agency, or unit" pursuant to 42 U.S.C. § 2000e-16(c), stating that "[t]he Pro Se Office of the court was unable to help [him] to interpret clearly this statement and advised [him] to write to [the Court]." (*Id.* at 2.)

On January 10, 2013, Judge Bloom issued another order that summarized plaintiff's attempts to serve ODA 5224 and stated that "Rule 4(i)(1) requires that plaintiff serve the Attorney General of the United States and the United States attorney for the district where he brought this civil action." (Doc. No. 42.) On January 16, 2013, plaintiff filed another Certificate of Service indicating that he had served copies of the complaint, summons, proof of service, and Judge Bloom's January 9 Order on Loretta E. Lynch, United States Attorney for the Eastern District of New York. (Doc. No. 43.) ODA 5224 filed its first submission – a request for a pre-motion conference regarding this motion – on March 19, 2013. (Doc. No. 45.)

---

[7] Plaintiff attempted to serve U.S. Attorney Hale because ODA 5224 is based at Fort Campbell, which is located in the Western District of Kentucky. (*See* Doc. No. 41.)

ODA 5224 contends that this Court lacks jurisdiction over the Secretary of the Army because service of process was insufficient. (Def.'s Mem. in Supp. at 13–14.) The Court is not persuaded. While it is axiomatic that proper service sufficient to give defendants notice of the claims against them is essential, it is equally well established that the practical difficulties facing litigants without representation or legal training necessitate special solicitude. *See, e.g.*, *Harris*, 572 F.3d at 71–72; *Green*, 260 F.3d at 83. Thus, "[w]hen dealing with *pro se* parties, courts interpret the rules dealing with service of process liberally." *St. John Rennalls v. Cnty. of Westchester*, 159 F.R.D. 418, 420 (S.D.N.Y. 1994); *see also Candelaria v. Erickson*, No. 01-CV-8594 (LTS) (RLE), 2005 WL 1529566, at *7 (S.D.N.Y. June 28, 2005). In particular, "Rule 4 . . . is to be construed liberally 'to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice'" and "incomplete or improper service" will not necessitate dismissal of an action where "it appears that proper service may still be obtained." *Romandette v. Weetabix Co., Inc.*, 807 F.2d 309, 311 (2d Cir. 1986) (quoting *Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir. 1972)) (emphasis omitted). Further, courts may excuse noncompliance with Rule 4 upon a showing of good cause. *See* Fed. R. Civ. P. 4(m); *see also Zankel v. United States*, 921 F.2d 432 (2d Cir. 1990); *Point-Dujour v. U.S. Postal Serv.*, No. 02-CV-6840 (JCF), 2003 WL 1745290, at *2 (S.D.N.Y. Mar. 31, 2003).

While plaintiff did not serve the Secretary of the Army directly, he did ultimately mail copies of the complaint and summons to the commanding officer of ODA 5224, the United States Attorney for the Eastern District of New York, and the Attorney General of the United States. *Cf. Doe v. Hagee*, 473 F.Supp.2d 989, 995 (N.D. Cal. 2007) (citing *Husek v. IRS*, 778 F. Supp. 598 (N.D.N.Y. 1991)) ("Where service is made properly on the United States Attorney but the complaint names the organization of the United States being sued instead of the United

States, service is still proper upon the United States.").  In this case, plaintiff's repeated attempts to effect service on the Commander of the 5th Special Forces Group, coupled with plaintiff's prompt compliance with Judge Bloom's orders, demonstrate his good faith attempts to comply with the Federal Rules of Civil Procedure.  It is also apparent that plaintiff interpreted the need to name the "head of the department, agency, or unit," 42 U.S.C. § 2000e-16(c), as requiring him to effect service on the commander of his Army "unit" – the "highest ranking officer[] of the 5th Group Special Forces."  (Pl.'s Affm. in Opp'n at 6; *see also* Doc. No. 41 at 2.)  Additionally, plaintiff apparently understood Judge Bloom's January 9 Order as tacitly approving his service on ODA 5224 and instructing that the only remaining requirement was that plaintiff serve the United States.  (*Id.*)

Despite these errors, it is clear that the Secretary of the Army now has actual notice of this suit.[8]  On these facts, the Court can discern no prejudice to the Secretary of the Army stemming from insufficient service of process and concludes that notice sufficient to exercise personal jurisdiction has been given.  *Cf. Zankel*, 921 F.2d at 437 (citing *Jordan v. United States*, 694 F.2d 833, 836 (D.C. Cir. 1982), and excusing a "technical defect" in service where "[b]oth the United States Attorney and the Attorney General had actual notice," "[t]he government did not suffer prejudice as it participated fully in pretrial proceedings," and the plaintiffs would have "suffered extreme prejudice from the dismissal of their complaint").

## C.  Improper Venue

Next, ODA 5224 argues that plaintiff's action is not properly venued in this district. Where a complaint alleges multiple claims, the plaintiff must establish that venue is proper as to each individual claim pled.  *Paul v. Shinseki*, No. 09-CV-1591 (CBA) (LB), 2010 WL 3927077,

---

[8] Moreover, ODA 5224 has already filed three motions for extensions of time – all of which have been granted by this Court.  (*See* Doc. Nos. 45, 46, 50.)

a *4 (E.D.N.Y. Sept. 29, 2010) (citing *Sollow Building Co. v. ATC Assocs., Inc.*, 175 F.Supp.2d 465, 469 (E.D.N.Y. 2001)).  Pursuant to 42 U.S.C. § 2000e-5(f)(3), a Title VII action may be brought

> [1] [I]n any judicial district in the State in which the unlawful employment practice is alleged to have been committed, [2] in the judicial district in which the employment records relevant to such practice are maintained and administered, or [3] in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but [4] if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.[9]

*Id.*; *see also Bolar v. Frank*, 938 F.2d 377, 379 (2d Cir. 1991) ("Almost uniformly, courts considering this question have applied section 2000e-5(f)(3) to determine venue in employment discrimination actions premised on Title VII . . . .").  "The special venue statute contained in Title VII controls venue under the act to the exclusion of the general venue statute."  *Pardy v. Gray*, No. 06-CV-6801 (JBW), 2007 WL 1825200, at *3 (E.D.N.Y. June 22, 2007) (citing *Bolar*, 938 F.2d at 379).  The plaintiff bears the burden of demonstrating that venue is proper, but the Court accepts as true all allegations in the complaint not contradicted by the defendant's affidavits.[10]  *Paul*, 2010 WL 3927077, at *4 (citing *EPA ex rel. McKeown v. Port Auth. of N.Y. & N.J.*, 162 F.Supp.2d 173, 183 (S.D.N.Y. 2001)).

As ODA 5224 argues, it is readily apparent that venue does not lie in this district under either the first or third situation.  Plaintiff's complaint alleges only actions that occurred in Iraq and fails adequately to allege that plaintiff would have worked in New York but for defendants' actions.  (*See generally* Compl.)  Likewise, the complaint is bereft of any allegations regarding

---

[9] Section 2000e-5(f)(3) further provides that, "[f]or purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought."  42 U.S.C. § 2000e-5(f)(3).

[10] Plaintiff states that L-3's principal corporate office is located in New York.  (*See* Compl. at 5 (ECF Pagination); Pl.'s Affm. in Opp'n at 4.)  ODA 5224 does not contradict this assertion.  (*See* Def.'s Reply (Doc. No. 51) at 5.)  Neither L-3 nor GLS appears to challenge venue.  (*See* Doc. Nos. 33, 34.)

the location of plaintiff's employment records relevant to the alleged unlawful employment practices. (*Id.*)

Venue may be established under the final "catch-all" provision of 42 U.S.C. § 2000e-5(f)(3), but not in this district. Since venue does not lie under the other three possibilities articulated in 2000e-5(f)(3) and the allegedly unlawful conduct occurred in Iraq, which is not encompassed by any judicial district, plaintiff's action may be brought in the district in which the respondent has its principal office. *See* 42 U.S.C. § 2000e-5(f)(3); *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993) ("[T]he judicial district where the employer's principal office is located is a proper place for venue only if venue cannot be laid in one of the other three possible districts specified in the statute."). ODA 5224 concedes that "this action could potentially have been brought in Virginia where the Secretary of the Army is located." (Def.'s Mem. in Supp. at 11 n.2.) Plaintiff's argument that venue lies in this district because he is "entitled by law to file [his] case with the [d]istrict court where [he] reside[s]" is incorrect. *See, e.g.*, *Paul*, 2010 WL 3927077, at *5 (rejecting a plaintiff's argument that venue should lie because "the Secretary [of Veterans Affairs] has resources that permit him to litigate this matter anywhere" and noting that "the application of the specific and mandatory venue provisions of Title VII . . . does not turn on the resources of individual plaintiffs").

Plaintiff's request that the Court exercise its discretion to adjudicate his claims under the doctrine of pendent venue, however, is more persuasive; in essence, plaintiff maintains that section 2000e-5(f)(3) establishes venue as to his claims against L-3 and urges the Court, under the pendent venue doctrine, to adjudicate his claims against the Army that he asserts are inextricably interconnected to his claims against L-3. (*See* Pl.'s Affm. in Opp'n at 4–5.) Pendent venue permits a district court to adjudicate a claim for which venue would not ordinarily

lie if that claim is anchored by a sufficiently related claim for which venue is proper. *See, e.g.*, *Paul*, 2010 WL 3927077, at *6; *Doe v. New York*, No. 10-CV-1792 (RJD) (VVP), 2012 WL 4503409, at *2–3 (E.D.N.Y. Sept. 28, 2012), *recons. denied*, 2013 WL 816197 (E.D.N.Y. Mar. 5, 2013). "Whether appending a federal or state claim, under the doctrine of pendent venue, a federal court may in its discretion hear pendent claims which arise out of the same nucleus of operative fact as a properly venued federal claim, even if venue of the pendent claim otherwise would not lie." *Cold Spring Harbor Lab. v. Ropes & Gray LLP*, 762 F.Supp.2d 543, 552 (E.D.N.Y. 2011) (quoting *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F.Supp.2d 449, 462 (S.D.N.Y.2000)) (emphasis omitted). Where a party urges the invocation of pendent venue, "courts have generally taken one of two approaches," either requiring that the case be brought in a venue which satisfies the most specific applicable venue statute or "determin[ing] which of the two federal claims is the 'primary' claim, and apply[ing] the venue statute applicable to that claim." *Solow Bldg. Co., LLC v. ATC Assocs., Inc.*, 175 F.Supp.2d 465, 469–70 (E.D.N.Y. 2001) (quoting *Hsin Ten Enter. USA*, 138 F.Supp.2d at 462–463); *Doe*, 2012 WL 4503409, at *2.

The Court need not choose between these approaches because this case implicates the same venue provision. Moreover, while "courts have generally avoided using the doctrine of pendent venue to override Congress's decision to require Title VII and Rehabilitation Act claims to be brought in accordance with 42 U.S.C. § 20003-5(f)(3)," *Paul*, 2010 WL 3927077, at *6 (citing *Bartel v. Fed. Aviation Admin.*, 617 F. Supp. 190, 198 n.33 (D.D.C. 1985)), applying the doctrine in this case does not contravene Congress's procedural prerogatives because the relevant claims are all brought pursuant Title VII and therefore subject to the same restrictions under 42 U.S.C. § 20003-5(f)(3). Plaintiff's claims against all parties stem from the same sequence of

actions and he alleges violations that are a product of coordination and cooperation between

ODA 5224, GLS, and L-3. Thus, the Court finds that plaintiff's claim against the Army "arise[s]

out of the same nucleus of operative fact" as his claims against L-3 and GLS. *Cold Spring*

*Harbor Lab.*, 762 F.Supp.2d at 552. Since no party raises a venue challenge to those claims, the

Court will exercise its discretion to adjudicate plaintiff's claims against the Army under the

doctrine of pendent venue.

## II.    Judgment on the Pleadings

Finally, the Army seeks judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

(*See* Def.'s Mem. in Supp. at 3–7.)   In particular, ODA 5224 maintains that it is entitled to

judgment because (1) plaintiff failed to exhaust his administrative remedies under Title VII

within the required time period and (2) alternatively, plaintiff was not a federal employee and the

Army cannot be held liable as his employer. As a result, ODA 5224 argues, plaintiff's claims

must be dismissed. Other than these bases, however, the Army does not address the merits of

plaintiff's complaint.

### A.  Standard of Review

Judgment on the pleadings is appropriate only where all material facts are undisputed and

"a judgment on the merits is possible merely by considering the contents of the pleadings."

*Mennella v. Office of Court Admin.*, 938 F. Supp. 128, 131 (E.D.N.Y. 1996), *aff'd*, 164 F.3d 618

(2d Cir. 1998) (citing *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988)). In

all other respects, "[t]he same standard applicable to Rule 12(b)(6) motions to dismiss applies to

Rule 12(c) motions for judgment on the pleadings." *Heller v. Consol. Rail Corp.*, 331 F. App'x

766, 767–68 (2d Cir. 2009) (citing *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994), *cert.*

*denied*, 513 U.S. 816 (1994)). Thus, the Court's review is "limited to facts stated on the face of

the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991); *Singh v. United States*, No. 12-CV-5047 (RRM), 2013 WL 3208428, at *1 (E.D.N.Y. June 24, 2013). The complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), and the Court draws all reasonable inferences in favor of the nonmovant. *See Harris*, 572 F.3d at 71. "Unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim which could entitle the plaintiff to relief, the court cannot grant a defendant's motion for a judgment on the pleadings." *Mennella*, 938 F. Supp. at 131 (citing *Sheppard*, 18 F.3d at 150). In considering the motion, the Court also remains mindful of its obligation to construe *pro se* pleadings liberally. *Green*, 260 F.3d at 83.

## B. Exhaustion of Administrative Remedies

The Army argues that plaintiff failed to exhaust his administrative remedies because he did not consult an Army EEO counselor within forty-five days of his termination. (Def.'s Mem. in Supp. at 7.) The Second Circuit "has treated the requirement that a federal employee bring a complaint to his or her EEO for resolution . . . as analogous to the requirement that a private sector employee first bring a complaint to the attention of the Equal Employment Opportunity Commission . . . for resolution." *Terry*, 336 F.3d at 150; *see also Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001); *Elhanafy*, 2012 WL 2122178, at *12 n.9. Hence, the Army maintains that plaintiff's failure to consult the Army's EEO renders his claims unexhausted. Moreover, because the forty-five day period to file such a complaint has since expired, the Army urges that any future complaint would be barred. (Def.'s Mem. in Supp. at 7.)

But plaintiff does not claim that he was a federal employee. (*See* Pl.'s Affm. in Opp'n (Doc. No. 49) at 5 (ECF Pagination).) In fact, plaintiff explicitly states that he is "not a [f]ederal employee or member of the US Armed Forces." (*Id.* at 5.) Rather, plaintiff alleges that he was an employee of L-3, but that ODA 5224, in "coordination with GLS and L-3" and motivated by "discrimination due to [his] race, faith[,] and background," caused him to be wrongfully terminated. (Compl. ¶ 19.) Tellingly, despite its claim that plaintiff should be treated as a federal employee for the purposes of exhaustion, ODA 5224 simultaneously seeks to reserve the right to argue that plaintiff was *not* a federal employee for the purposes of Title VII.[11] (*See* Def.'s Mem. in Supp. at 4 n.1.) Because plaintiff does not allege that he was a federal employee, his case does not rise or fall on his compliance with the exhaustion requirements for federal employees.[12]

ODA 5224 also argues that plaintiff failed to exhaust his administrative remedies against the Army because the charges filed with the EEOC and the NYSDHR named L-3 as the sole respondent. (*See* Compl. ¶ 62.) "A prerequisite to commencing a Title VII action against a defendant is the filing with the EEOC or authorized state agency of a complaint naming the defendant." *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991) (citing 42 U.S.C. § 2000e-5(e)); *Legnani v. Alitalia Linee Aeree Italiane, S.P.A*, 274 F.3d 683, 686 (2d Cir. 2001). However, "[b]ecause these charges generally are filed by parties not versed in the vagaries of Title VII and its jurisdictional and pleading requirements," the Second Circuit has "taken a

---

[11] Although parties may offer alternative arguments in support of a motion, here this distinction is problematic because plaintiff *did* submit a claim to the EEOC. ODA 5224 argues, *inter alia*, that plaintiff failed to exhaust his remedies because plaintiff did not consult the *Army's* EEO (*see* Def.'s Mem. in Supp. at 7), but if plaintiff was not a federal employee then he was not required to consult the Army's EEO.

[12] The Court also notes that the Second Circuit has recognized that "the 'remedial purpose of the civil rights legislation as a whole' would be defeated if aggrieved plaintiffs were absolutely barred from pursuing judicial remedies by reason of excusable failure to meet the time requirement." *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 397 (1982)) (internal alteration omitted); *see also S. v. Saab Cars USA, Inc.*, 28 F.3d 9, 11 (2d Cir. 1994).

'flexible stance in interpreting Title VII's procedural provisions' so as not to frustrate Title VII's remedial goals." *Johnson*, 931 F.2d at 209 (quoting *Egelston v. State Univ. College at Geneseo*, 535 F.2d 752, 754, 755 (2d Cir. 1976)) (internal citation omitted). This flexibility finds expression in the "identity of interest" exception, which allows a Title VII suit "to proceed against an unnamed party where there is a clear identity of interest between the unnamed defendant and the party named in the administrative charge." *Johnson*, 931 F.2d at 209; *see also Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999); *Olumuyiwa v. Harvard Prot. Servs., Inc.*, No. 98-CV-5110 (JG), 2000 WL 620202, at *2 (E.D.N.Y. May 12, 2000).

Whether the identity of interest exception applies depends on whether (1) the role of the unnamed party could, through reasonable effort by the complainant, have been ascertained when the EEOC charge was filed; (2) the interests of a named party and the unnamed party are so similar that, under the circumstances, it would be unnecessary to include the unnamed party in EEOC proceedings for the purpose of obtaining a voluntary resolution; (3) the absence of the unnamed party from the EEOC proceedings resulted in actual prejudice to the unnamed party; and (4) the unnamed party somehow represented that its relationship with the plaintiff was through a named party. *See Johnson*, 931 F.2d at 209–10 (quoting *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977)). This four-prong test "is not a mechanical one" and "no single factor is determinative." *Dortz v. City of New York*, 904 F. Supp. 127, 143 (S.D.N.Y. 1995) (citing *Goyette v. DCA Adver. Inc.*, 830 F. Supp. 737, 748 (S.D.N.Y. 1993)). "Instead, courts are to evaluate each factor in light of the statutory purposes underlying Title VII." *Dortz*, 904 F. Supp. at 143 (citing *Glus v. G.C. Murphy Co.*, 629 F.2d 248, 251 (3d Cir.), *cert. denied*, 449 U.S. 949 (1980)).

This question is not always amenable to resolution on a Rule 12(c) motion. *See, e.g.*, *Olvera-Morales v. Sterling Onions, Inc.*, 322 F.Supp.2d 211, 219 (N.D.N.Y. 2004) (finding that issues of fact precluded a decision as to whether the identity of interest exception applied). That is the case here. In the employment context, the division of roles and responsibilities between the military and its contractors is complex, and plaintiff's complaint is hardly a model of clarity in describing the actions of each defendant entity leading up to his termination. While further factual development is necessary, Al-Kaysey has, at least at the pleading stage, plausibly alleged sufficient facts to suggest sufficient identity of interest exists between L-3, GLS and the Army to survive a motion to dismiss. *Ayala*, 2011 WL 1486559, at *7. [13] Moreover, equitable considerations bode against dismissal.

It is apparent that plaintiff could have – and did – ascertain the role of the Army at the time he filed his EEOC complaint. In fact, plaintiff states that his complaints to the EEOC and the NYSDHR detail the roles of each defendant. (*See* Pl.'s Affm. in Opp'n at 4, 5.) However, plaintiff also proceeded *pro se* and allegedly "was instructed by the head investigator [at the EEOC] to file [his] charge against the entity that paid [his] wages." (*Id.* at 5.) Similarly, with reference to the NYSDHR, plaintiff "was instructed by the investigator" that he must "file [his] charges against the defendant who paid [his] wages and [was] located within the State of New York." (*Id.*). Under such circumstances, it is hardly clear that plaintiff may be faulted for failing to name additional respondents. *Cf. Dortz*, 904 F. Supp. at 143; *Goyette*, 830 F.Supp. at 748.

In addition, plaintiff has pled facts indicating significant "interrelation of operations as to his job function," *Goodman v. Port Auth. of New York & New Jersey*, 850 F.Supp.2d 363, 385 (S.D.N.Y. 2012), and L-3, GLS and ODA 5224 may share some common interests. There are

---

[13] GLS, too, was not named in Al-Kaysey's EEO complaint and also moves to dismiss the complaint against it for failure to exhaust administrative remedies. For the reasons discussed herein, GLS's motion to dismiss is also denied.

contractual arrangements between L-3, GLS and ODA 5224 that may define the degree of control concerning the parties' conduct, and it is far from clear as to whether a voluntary resolution reached between ODA 5224 and plaintiff might bind L-3 and/or GLS, or whether any resolution binding ODA 5224 would require the Army's participation. *Compare Brodie v. New York City Transit Auth.*, No. 96-CV-6813 (LMM), 1998 WL 599710, at *6 (S.D.N.Y. Sept. 10, 1998) ("[S]imilarity of interest has been found only in cases where the named and unnamed parties are aligned in some way such that efforts at conciliation with one would render similar efforts with the other unnecessary . . . ."). In addition, L-3, GLS and the Army might well have different interests as plaintiff alleges discriminatory acts committed by ODA 5224 soldiers but does not allege comparable conduct by employees of L-3 or GLS.

Moreover, because there were no EEOC proceedings in the instant case, it is hard to see how the Army or GLS could have been prejudiced in any way. *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1242 (2d Cir. 1995); *Schade v. Coty, Inc.*, No. 00-CV-1568 (JGK), 2001 WL 709258, at *5 (S.D.N.Y. June 25, 2001) ("In general, where the EEOC makes no investigatory or conciliatory efforts, courts will find that an unnamed party has not suffered any prejudice."). ODA 5224's brief offers no hint of prejudice and any EEOC mandate would not have bound the Army. *Cf. Kilkenny v. Greenberg Traurig, LLP*, No. 05-CV-6578 (NRB), 2006 WL 1096830, at *3 (S.D.N.Y. Apr. 26, 2006) (noting that an EEOC decision regarding one entity "would have no effect" on a "completely distinct business entity"). It is at least plausible that both the Army and GLS were aware of plaintiff's EEOC complaint.[14] *Cf. Ayala*, 2011 WL 1486559, at *7 (finding that shared executive personnel, common office space, and shared control of labor relations

---

[14] In addition, plaintiff gave at least some indication of his forthcoming EEOC complaint when plaintiff complained to Colonel Mitchell about his termination. (*See* Compl., Ex. 15.) Plaintiff also reported instances of discrimination to the Office of the Inspector General of the Army, albeit anonymously since he was still embedded with ODA 5224. (*See id.* ¶¶ 9. 27.) Even if plaintiff did not identify himself at the time, however, he identified the nature of the grievance and the offending personnel. (*Id.*)

"g[a]ve rise to a plausible inference" that a charge would have served to notify an unnamed party about the plaintiff's complaints and the possibility of litigation); *Schade*, 2001 WL 709258, at *5 (finding no prejudice to an unnamed party where the unnamed party was aware of both the plaintiff's EEOC charge and a relationship between itself and the party named in the charge).

Finally, plaintiff was hired by L-3 and signed an employment contract with GLS. (Compl. ¶¶ 40–41.)  He was required during his employment to apply to GLS and L-3 for vacation approval.  (*Id*. ¶¶ 32–34.)   Plaintiff was taken to a GLS office in Baghdad before being terminated, where he requested – for the first time – to speak with a representative from the legal or human resources department.  (*Id*. ¶ 36.)  His termination letter, which issued from L-3 and not the Army, indicates that questions about benefits or pay should be directed to L-3.  (*Id.*, Ex. 18.)  And it was L-3 that officially filed the incident report with JPAS.  (*See id*. ¶ 45; Ex. 17.) Under these circumstances, a fact finder could reasonably conclude that the Army represented to plaintiff that its relationship with plaintiff was through L-3 and/or GLS.[15]

The identity of interest exception is to be applied in a manner that effectuates the statutory purposes underlying Title VII.  *See Dortz*, 904 F. Supp. at 143; *Goyette*, 830 F. Supp. at 748.  "The objective of Congress in the enactment of Title VII . . . was to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group . . . ."  *Griggs v. Duke Power Co.*, 401 U.S. 424, 429–30 (1971).  "The purpose of an EEOC charge," moreover, "is 'to notify the charged party of the alleged violation

---

[15] Plaintiff alleges that Colonel Mitchell, while the commanding officer of the 5th Special Forces Group, informed him that "this is a matter to be resolved strictly between you and your civilian employer and that any additional due process that is available must be routed through L-3 Communications." (Compl., Ex. 15.)  The Court acknowledges that this letter, dated May 17, 2011, was sent after plaintiff filed his complaint with the EEOC on March 24, 2011. As such, the letter itself could not have played a role in plaintiff's initial decision not to name ODA 5224 or the Army as a respondent in the EEOC proceeding.  The letter was, however, a final response to a complaint from plaintiff submitted on February 21, 2011, well in advance of the filing of plaintiff's EEOC charge.  (*Id.*)  Construing plaintiff's pleadings to raise the strongest arguments they suggest and drawing all reasonable inferences in plaintiff's favor, it is certainly plausible that similar representations were made to plaintiff prior to the filing of his charge with the EEOC.

and also to bring the party before the EEOC, making possible effectuation of the Act's primary goal of securing voluntary compliance with its mandates." *Ayala*, 2011 WL 1486559, at *7 (quoting *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999)).

Thus, mindful of plaintiff's *pro se* status and drawing all inferences in plaintiff's favor, and recognizing the need for further factual development on the complex issues relating to the relationship between the defendant entities, the Court declines to dismiss plaintiff's complaint for failure to exhaust his administrative remedies as to the Army and GLS.

### C. "Joint Employer" Liability

ODA 5224 also argues that, if it was not plaintiff's employer, it cannot be held liable under Title VII. That is generally true. *See, e.g.*, 42 U.S.C. § 2000e-2; *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 63 (2d Cir. 1992). But courts have consistently recognized several situations in which liability may be imposed under Title VII in the absence of a traditional or straightforward employer-employee relationship. *See, e.g.*, *Cook* 69 F.3d at 1240 (quoting *Spirt v. Teachers Ins. & Annuity Ass'n*, 691 F.2d 1054, 1063 (2d Cir. 1982), *vacated and remanded on other grounds*, 463 U.S. 1223 (1983)) (stating that "the term 'employer' is 'sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities, regardless of whether the party may technically be described as an 'employer' at common law'") (internal alterations omitted); *see also Gulino v. New York State Educ. Dep't*, 460 F.3d 361, 373 (2d Cir. 2006). Particularly relevant here is the "joint employer" test, which "utilizes a four-factored analysis . . . to determine whether two or more employers can be treated as one for purposes of assigning liability." *Gulino*, 460 F.3d at 378. "Where this doctrine is operative, an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time

constructively employed by another entity, may impose liability for violations of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer." *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005) (citing *Clinton's Ditch Co-op Co., Inc. v. N.L.R.B.*, 778 F.2d 132, 137 (2d Cir. 1985)).

To determine whether an entity should be considered a joint employer, the Court looks to four factors: (1) common ownership or financial control; (2) common management; (3) interrelation of operations; and (4) centralized control of labor relations. *See Clinton's Ditch*, 778 F.2d at 137; *Gulino*, 460 F.3d at 378. Additionally, the Second Circuit has held that "an essential element under any determination of joint employer status in a subcontracting context is . . . sufficient evidence of immediate control over the employees." *Clinton's Ditch*, 778 F.2d at 138. In that connection, the Court also considers a defendant's control over other relevant aspects of employment, including (5) hiring and firing of employees; (6) imposition of discipline; (7) responsibility for payroll, insurance, and maintenance of records; and (8) supervision of employees. Whether an entity "possessed sufficient indicia of control" to be considered a joint employer, however, "is essentially a factual issue." *Boire v. Greyhound Corp.*, 376 U.S. 473, 481 (1964); *see also Clinton's Ditch*, 778 F.2d at 136. "Accordingly, the question is generally not suited to resolution on a motion to dismiss." *Ayala v. Metro One Sec. Sys., Inc.*, No. 11-CV-233 (JG) (ALC), 2011 WL 1486559, at *6 (E.D.N.Y. Apr. 19, 2011) (citing *Dias v. Community Action Project, Inc.*, 2009 WL 595601, at *5 (E.D.N.Y. March 6, 2009)).

Here, plaintiff has plausibly alleged that ODA 5224, in concert with its contractor GLS and subcontractor L-3, caused him to be wrongfully terminated. Plaintiff has also alleged facts suggesting that defendants' operations were closely intertwined and that labor relations decisions and other important aspects of employment – while implemented by L-3 and/or GLS – were

actually dictated by the Army.  Indeed, plaintiff alleges that it was the discriminatory animus of

ODA 5224 personnel that led to plaintiff's termination.  Viewed under the more liberal standard

applicable to *pro se* litigants and drawing all inferences in plaintiff's favor, these allegations

plausibly plead liability premised on a theory of joint employment.  Thus, without further factual

development, the Court cannot say that "plaintiff can prove no set of facts in support of his . . .

claim[s] which could entitle [] plaintiff to relief . . . ."  *Mennella*, 938 F. Supp. at 131 (citing

*Sheppard*, 18 F.3d at 150).  As such, plaintiff has pled "sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (citing

*Twombly*, 550 U.S. at 570).  Plausibility "does not refer to the likelihood of success on the merits

of the legal claim," *Twombly*, 550 U.S. at 555, and plaintiff need only "nudge[] [his] claims

across the line from conceivable to plausible." *Id.* at 570.  Plaintiff has met that burden here as

to all three defendants.

## CONCLUSION

For the foregoing reasons, defendant ODA 5224's motion to dismiss (Doc. No. 48) is

DENIED and this matter is recommitted to Magistrate Judge Bloom for continued pretrial

supervision.  The Clerk of Court is directed to amend the caption to substitute the Secretary of

the Army for ODA 5224.  The Clerk of Court is further directed to transmit a copy of this

Memorandum and Order to plaintiff *pro se* by U.S. Mail.

SO ORDERED.

Dated: Brooklyn, New York
      September 27, 2013

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge