UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
AHMAD AL-KAYSEY

               Plaintiff,           **MEMORANDUM AND ORDER**
                                                  11-CV-6318 (RRM)(LB)
     - against -

L-3 SERVICES, INC., LOTS DIVISION, L-3
COM; GLOBAL LINGUISTIC SOLUTIONS;
ODA 5224 SPECIAL FORCES, US ARMY

               Defendants.
-----------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge:

      Plaintiff Ahmad Al-Kaysey, proceeding *pro se*, brings this action against defendants L-3 Services, Inc. ("L-3"), Global Linguistic Solutions ("GLS"), and ODA 5224, a Special Forces unit of the United States Army ("ODA 5224") and asserts various claims arising out of his employment as a linguist in Iraq. Al-Kaysey claims that defendants terminated him because of his race, religion, color and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, denied him due process, and violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. by not paying him overtime wages. Defendants L-3 and GLS have each moved to dismiss all claims against them. (Doc. Nos. 33 & 34.) This Order addresses both motions, and grants them in part and denies them in part.

## BACKGROUND

      The facts are fully set forth in the companion Memorandum and Order issued this date addressing the Motion to Dismiss filed by ODA 5224, familiarity with which is presumed.

## STANDARD OF REVIEW

"A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (internal quotation marks omitted). Therefore, the Court construes Al-Kaysey's complaint with "special solicitude" and interprets it to raise the strongest arguments it suggests. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (quoting *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir.1994)).

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint need not contain "'detailed factual allegations,'" but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Rather, the plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). The determination of whether "a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)).

# DISCUSSION

**I.     Title VII**

Al-Kaysey claims that L-3 and GLS terminated him on account of his race, color, religion and national origin, in violation of Title VII. (*See* Compl. ¶¶ 15, 19.) The reasons cited for his termination, namely, that the military demanded his termination, were simply "a cover up for their racial and discriminatory motivation to ruin my career due to my race, religion, and background," according to Al-Kaysey. (*Id*. ¶ 15.) L-3 argues that this claim should be dismissed because Al-Kaysey "makes no specific allegations of discrimination . . . or retaliation against L-3 in the entirety of his lengthy Complaint." (L-3 Mot. to Dismiss (Doc. 33-1) at 4.) Rather, all of the allegations of discrimination contained in the complaint were committed by ODA 5224, not L-3. In opposition, Al-Kaysey argues that L-3 "adopted" the discriminatory actions of ODA 5224 when terminating him (Pl.'s Opp'n to Mot. to Dismiss (Doc. 33-8) at 2) and that all three defendants – GLS, L-3, and ODA 5224 – conspired and cooperated to deprive Al-Kaysey of his rights. At this early stage, and liberally construing plaintiff's pleadings in light of his *pro se* status, the Court finds that Al-Kaysey has plausibly alleged a Title VII claim against both L-3 and GLS.[1]

An employment discrimination claim need not allege specific facts to establish a *prima facie* case of discrimination under *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *Leibowitz v. Cornell Univ.*, 445 F.3d 586, 591 (2d Cir. 2006). Rather, a complaint need contain

---

[1]GLS did not address this point in its papers, arguing only that the Court should dismiss Al-Kaysey's Title VII claims because Al-Kaysey failed to name GLS as a respondent in his filings before the EEOC and NYSDHR and that his error was not excused by the "identity-of-interest" exception. In the separate Memorandum and Order issued this date addressing ODA 5224's Motion to Dismiss, the Court addressed at length the identity of interest exception with regard to all three defendants, as well as equitable reasons for excusing Al-Kaysey's failure to name GLS and ODA 5224 in his administrative complaint. For the reasons stated therein, the Court denies GLS's motion on the grounds it asserts.

3

only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. (internal quotation marks and citations omitted).

The clear implication of Al-Kaysey's contentions, asserted throughout his complaint and in his opposition papers, is that GLS, L-3, and ODA 5224 invoked a pretext for his termination – that is, that he had unauthorized contact with an informant – when the true reason for his termination was discriminatory animus. While it is true that alleged discriminatory remarks were made by ODA 5224 personnel, Al-Kaysey also alleges that GLS and/or L-3 knew or should have known of the alleged discriminatory acts committed by ODA 5224. *See D.T. v. Somers Cent. Sch. Dist.*, 348 F. App'x 697, 699 (2d Cir. 2009). Thus, at least at this stage of the proceedings, and in light of his *pro se* status, plaintiff has alleged sufficient facts to state a plausible claim.

Dismissal in the face of these allegations is particularly inappropriate here. Courts in this Circuit have adopted two exceptions to the rule that employment discrimination may be maintained only against a plaintiff's direct employer. First, under the "single employer doctrine," liability may be found "when two nominally separate entities are part of a single integrated enterprise." *Lima v. Adecco*, 634 F.Supp.2d 394, 399-400 (S.D.N.Y. 2009) quoting *Arculeo v. On-Site Sales v. Mktg.*, LLC, 425 F.3d 193, 198 (2d Cir. 2005)) (internal quotation marks omitted); *see also Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 378 (2d Cir. 2006) (noting use of single employer analysis where plaintiff's employment is subcontracted to another employer). From the facts as pled, this may very well be the case with the defendants herein as Al-Kaysey has repeatedly raised facts suggesting a close relationship between those entities, including receipt of two separate termination letters, one from L-3 and a second from GLS.

Second, under the "joint employer doctrine," liability may be found when "separate legal entities have chosen to handle certain aspects of their employer-employee relationships jointly."

4

*Lima*, 634 F. Supp. 2d at 400 (quoting *Gore v. RBA Grp.*, Inc., No. 03-CV-9442, 2008 WL 857530, at *3 (S.D.N.Y. Mar. 31, 2008)). "Where this doctrine is operative, an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violation of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer." *Arculeo*, 425 F.3d at 198. In this regard, the Second Circuit has "not yet fully analyzed or described a test for what constitutes joint employment in the context of Title VII. . . . The indicia suggesting a conclusion of joint employment may vary depending on the purpose of the inquiry." *Id*. at 199 n.7 (*citing Zheng v. Liberty Apparel Co., Inc.*, 355 F.3d 61, 72 (2d Cir. 2003)) (articulating a six-part joint employer test in the context of an alleged violation of the Fair Labor Standards Act). The *Zheng* Court, for example, directed the district court to apply an "economic realities" test based on "the circumstances of the whole activity" to determine whether independent entities function as a joint employer. *Id*. at 71-72 (stating that "[t]he court is also free to consider any other factors it deems relevant to its assessment of the economic realities"). Other courts have found a joint employer relationship in the discrimination context where "there is sufficient evidence that the defendant had immediate control over the formal employer's employees." *Dupree v. Urban Homesteading Assistance Bd. Sterling St. Hous. Dev. Fund Corp.*, No. 10-CV-1894, 2011 WL 1343163, at *6 (E.D.N.Y. Apr. 8, 2011) (internal quotation marks and citations omitted). Relevant factors may include "commonality of hiring, firing, discipline, pay, insurance, records, and supervision." *Id*.

As discussed more fully in the companion Memorandum and Order, plausible facts have been pled implicating all of these bases for employment, and further fact development is

required. Granted, "joint-employer liability does not by itself implicate vicarious liability" and "a finding that two companies are an employee's 'joint employers' only affects each employer's liability to the employee for their *own* actions . . . ." *Torres-Negron v. Merck & Co., Inc.*, 488 F.3d 34, 41 (1st Cir. 2007) (citing *Virgo v. Riviera Beach Assoc., Ltd.,* 30 F.3d 1350, 1359–63 (11th Cir. 1994)); *see also Amaya*, 645 F.Supp.2d at 122. However, at this stage of the proceedings, the Court cannot conclude that such liability has not been pled. For these reasons, the Court finds that Al-Kaysey has pled plausible Title VII claims against both L-3 and GLS.

**II.     Due Process**

Throughout his complaint, plaintiff also claims that L-3 and GLS violated his procedural due process rights under the Fifth and Fourteenth Amendments by failing to provide any evidence, produce any witnesses, or offer other material substantiating his termination or and the filing of the incident report in JPAS. (*See, e.g.*, Compl. ¶¶ 43, 50, 55–56.) L-3 and GLS argue that these claims should be dismissed because, as private employers, they are not liable for constitutional torts under 42 U.S.C. § 1983.[2] (L-3 Reply Br. (Doc. 33-9) at 3-4; GLS Mot. to Dismiss (Doc. No. 34-2) at 4 n.5 (quoting *Bektic-Marrero v. Goldberg*, 850 F. Supp. 2d 418, 432-33 (S.D.N.Y. 2012)).) Plaintiff's allegations, however, do not implicate section 1983, which applies to *state* actors. Rather, plaintiff alleges that GLS and L-3 acted in in concert with the United States Army. *See Lubrano v. United States*, 751 F. Supp. 2d 453, 455 (E.D.N.Y. 2010) (citing *Weise v. Syracuse Univ.*, 522 F.2d 397 (2d Cir. 1975)) ("[I]t is well-settled that Section 1983 does not provide an avenue to assert causes of action against the federal government or its agents."). Thus, plaintiff's due process claim is governed by the Fifth Amendment itself.

---

[2] L-3 argued that plaintiff's due process claim should be dismissed for the first time in its reply brief. As such, the Court is free to consider or disregard this argument. *See Am. Hotel Int'l Grp., Inc. v. OneBeacon Ins. Co.*, 611 F. Supp. 2d 373, 375 (S.D.N.Y. 2009).

"The Due Process clause of the Fifth Amendment prohibits the federal government[] from depriving any person of 'life, liberty, or property, without the due process of law.'" *United States v. Laurent*, 861 F. Supp. 2d 71, 106 (E.D.N.Y. 2011) (quoting U.S. Const. amend. V). "Purely private action does not trigger any constitutional protections." *Liberty Mortg. Banking, Ltd. v. Fed. Home Loan Mortg. Corp.*, 822 F. Supp. 956, 958 (E.D.N.Y. 1993). However, where a plaintiff alleges that a private actor has violated his constitutional rights, liability under the Fifth Amendment may attach if the Court determines that the private actor's conduct is attributable to the federal government. *See Liberty Mortg. Banking*, 822 F. Supp. at 959 (internal citations and quotation marks omitted); *see also San Francisco Arts & Athletics, Inc.*, 483 U.S. at 546 (noting that a private entity's actions can be attributed to the government "only when the [government] has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the [government]").

The Court need not determine, however, whether the actions of GLS and L-3 are attributable to the federal government, because plaintiff has failed to allege a cognizable constitutional deprivation. The Fifth Amendment protects both property and liberty interests. *See Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 629 (2d Cir. 1996) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 570–71 (1972)). In order for a plaintiff to have a protectable property interest in continued employment, he must demonstrate a "'legitimate claim of entitlement to'" his job. *Ciambriello v. County of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002) (quoting *Roth*, 408 U.S. at 577). At-will employees do not have a property interest in their continued employment that is protected by the Fifth Amendment. *See Goetz v. Windsor*, 698 F.2d at 608 ("Supreme Court cases make clear that at will employees possess no protectable property interest in continued employment."). Without any allegations suggesting plaintiff was

guaranteed continued employment, plaintiff has failed to allege a procedural due process claim based on a property interest theory.

A plaintiff's "liberty interest is implicated where the government dismisses him based on charges 'that might seriously damage his standing and associations in his community' or that might impose 'on him a stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities.'" *Brandt v. Bd. of Co-op. Educ. Servs., Third Supervisory Dist., Suffolk Cnty., N.Y.*, 820 F.2d 41, 43 (2d Cir. 1987) (quoting *Roth*, 408 U.S. at 573); *see also Fillie-Faboe v. Vocational Educ. & Extension Bd.*, No. 95-CV-4887, 2001 WL 533739, at *8 (E.D.N.Y. May 11, 2001) ("The Constitution recognizes a government employee's Fourteenth Amendment 'liberty' right to be free from stigmatizing disciplinary action, such as the foreclosure of opportunities to take advantage of other employment prospects."). "For example, charges that the employee is guilty of dishonesty or immorality are stigmatizing because they call into question the person's 'good name, reputation, honor, or integrity.'" *Brandt*, 820 F.2d at 43 (quoting *Roth*, 408 U.S. at 573). Loss of reputation alone is not sufficient to invoke due process clause protections; but loss of reputation, coupled with an inability to obtain another job in a chosen field, may state a claim under the Due Process Clause. *See, e.g.*, *Baden v. Koch*, 799 F.2d 825, 830 (2d Cir. 1986) ("[W]here it was unlikely that the terminated plaintiff would ever again obtain a supervisory position in the public schools or elsewhere, this deprivation coupled with the damage to his professional reputation entitled him to recover on his due process claim.").

Such a "stigma-plus" claim requires a plaintiff to allege stigmatizing statements made by an employer that call into question the plaintiff's "good name, reputation, honor or integrity." *Id.* (citations omitted); *see also Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006)

(quoting *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 630-31 (2d Cir. 1996)). Plaintiff must also allege, however, that the statements were made public and were made around the same time that he was dismissed from his employment. *Patterson*, 370 F.3d at 330 (citations omitted); *see also Segal*, 459 F.3d at 212. The purpose of the public disclosure requirement "is to limit a constitutional claim to those instances where the stigmatizing charges made in the course of discharge have been or are likely to be disseminated widely enough to damage the discharged employee's standing in the community or foreclose future job opportunities." *Brandt*, 820 F.3d at 44. The remedy for a stigma-plus claim is a name-clearing hearing. *See Segal*, 459 F.3d at 213; *Patterson*, 370 F.3d at 335.

Plaintiff alleged that L-3 and GLS made stigmatizing statements that he interacted with suspected terrorists in Iraq (*see* Compl., Ex. 17), that these statements were false (Compl. ¶ 18), and that L-3 made them public by filing an incident report in JPAS. (*See* Compl. ¶ 45, Ex. 17.) Because of the incident report in JPAS, plaintiff alleges he is unable to obtain new employment as a linguist requiring a security clearance. However, it is well established that the denial, suspension, or revocation of a security clearance cannot form the basis of a due process claim. *See, e.g.*, *Dep't of the Navy v. Egan*, 484 U.S. 518, 528 (1988); *Hesse v. Dep't of State*, 217 F.3d 1372, 1377 (Fed. Cir. 2000); *Dorfmont v. Brown*, 913 F.2d 1399, 1403 (9th Cir. 1990). Additionally, as the district court in *Gulati v. Zuckerman*, 723 F. Supp. 353 (E.D. Pa. 1989), recognized,

> The maintenance of the necessary level of security throughout our vast defense industry requires a high level of cooperation by defense contractors. Contractors have the duty to report all manner of potentially damaging information about their employees to the appropriate federal authorities. They must be able to do this free of the fear of expensive litigation. Self-censorship in adverse information reporting would be extremely detrimental to the federal goal of ferreting out security risks in the defense industry. It is the province of federal security

> investigators, not of reporting contractors, to sort out valid reports of employee misbehavior from unfounded fictions.

*Id.* at 358. Consequently, at least with respect to state tort actions, "[d]efense contractors and their security personnel cannot be sued for making reports to the United States about individuals who have access to our nation's classified information." *Montgomery v. Sanders*, No. 07-CV-470, 2008 WL 4546262, at *4 (S.D. Ohio Aug. 18, 2008); *see also Murray v. Northrop Grumman Info. Tech., Inc.*, 444 F.3d 169, 175 (2d Cir. 2006) ("We think that when a private contractor, hired to perform a quintessential governmental function, in the course of its official duties conveys information with possible national security implications to the agency charged with its oversight, that contractor is absolutely immune from state tort liability for claims resulting from that information-sharing.").

The Court concludes that similar logic is applicable here. Given the executive discretion inherent in the granting of security clearances and the duty of contractors to report any incidents that potentially bear adversely on an individual's fitness to possess a clearance, the incident report concerning plaintiff filed on JPAS does not rise to the level of a "stigma" cognizable under the Due Process Clause. Moreover, "JPAS is a database used by the Department of Defense to maintain information about the security clearances of employees and contractors," *The Ravens Grp., Inc. v. United States*, 78 Fed. Cl. 390, 393-94 (Fed. Cl. 2007), and is not generally publicly accessible. Nor is it akin to a public personnel file. *Compare Segal*, 459 F.3d at 213. As such, even if the incident report could constitute a stigma there was no public dissemination of the information. To be sure, plaintiff alleges that he was denied certain job opportunities because of questions about his security clearance attributable to the incident report. However, because plaintiff has no entitlement to a security clearance, the fact that plaintiff may have been denied employment opportunities requiring a clearance due to questions about his

10

clearance does not rise to the level of a deprivation under the Due Process Clause. Accordingly, plaintiff's due process claim must be dismissed.

### III. Fair Labor Standards Act

Al-Kaysey also alleges that L-3 violated federal wage and labor laws by failing to pay him overtime wages. (*See* Compl. ¶¶ 42.) The Court construes this allegation to raise a claim for a violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. L-3 argues that this claim should be dismissed because the FLSA does not apply to employees whose services are performed in a foreign country.[3] The Court agrees. The overtime provisions of FLSA do "not apply with respect to any employee whose services during the workweek are performed in a workplace within a foreign country." 29 U.S.C. § 213(f). Al-Kaysey worked as a linguist in Iraq, which is a foreign country. Therefore, he cannot state a claim for overtime wages under FLSA, and this claim will be dismissed.[4]

---

[3] L-3 did not raise this argument until it filed its reply brief, but the Court will consider it. *See supra* n.2.

[4] Al-Kaysey also alleges that L-3 violated "federal labor laws and employment rights" for having a policy of at-will employment. (Compl. ¶ 58.) At-will employment policies do not, on their own, violate federal law. Al-Kaysey has not identified a particular statute that such a policy would violate, and the court has not identified one.

## CONCLUSION

For the foregoing reasons, Al-Kaysey's Title VII discrimination claims against both L-3 and GLS may proceed. His claims under the Due Process Clause and the Fair Labor Standards Act are dismissed without prejudice.

This case is recommitted to the assigned magistrate judge for supervision of all pre-trial proceedings. The Clerk of Court is directed to mail a copy of this Memorandum and Order to plaintiff.

SO ORDERED.

Dated: Brooklyn, New York
       September 27, 2013

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge